NOT DESIGNATED FOR PUBLICATION

No. 113,151

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDON D. ALLER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed February 19, 2016. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., LEBEN and BRUNS, JJ.

*Per Curiam*:  On August 18, 2014, Brandon D. Aller pled guilty to aggravated indecent liberties with a 12-year-old girl, in violation of K.S.A. 2013 Supp. 21-5506(b)(3)(A), (c)(2)(C). The district court sentenced Aller to 59 months' imprisonment and imposed lifetime postrelease supervision. On appeal, Aller contends this lifetime postrelease supervision is unconstitutional as applied to his case. Finding no error, we affirm the district court's order of lifetime postrelease supervision.

1

The relevant case facts were set forth in an affidavit prepared by Detective Maggie Schreiber of the El Dorado police department and filed in support of Aller's arrest. According to the affidavit, on April 6, 2014, an El Dorado resident reported that his roommate, Aller, had the victim over for the night. The roommate thought Aller was having sex with the victim. The roommate said he heard Aller tell her, "This is probably going to hurt," and ask, "Does it hurt?" as the two were together under blankets.

Both Aller and the victim were at the residence when the police arrived. Aller repeatedly denied having sex with the victim, telling the officers he "would not do anything sexual with her because she was only 12." Instead, Aller claimed to have had intercourse with another minor, a 15-year-old girl. The victim in the present case would later tell an investigator the 15-year-old girl "gets jealous of her because [she] gets most of the attention" from Aller.

Aller insisted to police that he was not attracted to the victim. Eventually, however, Aller admitted "he has sex with younger girls because he feels more confident with them as opposed to older females." Aller further "admitted this was a problem and he needed counseling."

Aller ultimately admitted to having sexual relations with the victim, saying they had been "'torturing' each other which got both of them sexually aroused." The officer observed numerous bite marks on Aller. Aller said he had intercourse with the victim on several occasions, and he also described incidents of oral sodomy. Aller admitted that he knew the victim's age before initiating sexual relations with her.

The State filed three counts of rape and two counts of aggravated criminal sodomy as off-grid felonies subject to the hard 25 life sentence. On August 18, 2014, Aller

appeared with his counsel to plead guilty to an amended complaint of one count of aggravated indecent liberties with a child. As part of the plea agreement, the State of Kansas omitted Aller's age (18 years old) in the charging document, thereby avoiding a hard 25 life sentence. Instead, Aller was charged with a severity level 3 felony.

At the plea hearing, the trial court informed Aller, "The statute calls for . . . lifetime post-release supervision for this kind of offense." Aller said he had no questions regarding his sentence and told the trial court he wished to enter a guilty plea "of my own free will." The trial court accepted the plea, found Aller guilty, and set the matter for sentencing.

On October 16, 2014, Aller appeared for sentencing. For the first time, Aller objected to lifetime postrelease supervision. Defense counsel argued that Aller's crime was "factually consensual, if not legally consensual." Defense counsel maintained it was "unconscionable" for Aller to face life imprisonment if he committed another felony when "there's no criminal history with Mr. Aller prior to today."

The district court continued sentencing for briefing on the issue of lifetime postrelease supervision, and it heard arguments at two more hearings. The district court received no evidence, but at the third hearing the court asked the State if it had any further information regarding the victim. On that occasion, the State identified the arrest affidavit and summarized its contents for the district court.

The district court held lifetime postrelease supervision was not unconstitutional in Aller's case. The district court emphasized the young age of the victim and the fact that she was not Aller's only minor sexual partner. The district court found Aller was not "duped into this, tricked into it" but was "somewhat predatory towards young girls." Lastly, the district court found "the long-term effects may be somewhat significant on

3

[the victim] psychologically." Based on these findings, the district court ordered Aller to submit to lifetime postrelease supervision.

Aller filed a timely appeal.

ANALYSIS

On appeal, Aller contends that lifetime postrelease supervision is grossly disproportionate in his case and therefore cruel or unusual punishment, in violation of § 9 of the Kansas Constitution Bill of Rights.

Our standards of review provide that when "deciding whether a sentence is cruel or unusual under § 9 of the Kansas Constitution Bill of Rights, a district court must make both legal and factual determinations." *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012). On appeal, "[a]ll of the evidence is reviewed, but not reweighed, to determine if there is sufficient support for the district court's factual findings, and the district court's legal conclusions drawn from those facts are reviewed de novo." 294 Kan. at 906.

Aller is presenting an as-applied challenge to his sentence, not a facial challenge to K.S.A. 2013 Supp. 22-4906(d)(3), which required lifetime registration upon conviction of aggravated indecent liberties with a child. In *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), our Supreme Court held: "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." In the judicial analysis of these matters, courts should consider the following factors:

4

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

In determining whether a defendant's punishment is constitutionally impermissible under the *Freeman* factors, "[n]o one factor controls." *State v. Cameron*, 294 Kan. 884, 890, 281 P.3d 143 (2012). "'Ultimately, one consideration may weigh so heavily that it directs the final conclusion,' but 'consideration should be given to each prong of the test.'" 294 Kan. at 890 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2008]).

Of note, Aller briefs only the first *Freeman* factor. Aller cites *Mossman* regarding the second and third *Freeman* factors, but we will not consider the second and third factors without argument pertaining to the present case. Since points incidentally raised but not briefed are deemed waived or abandoned on appeal, we conclude Aller's claim is unsupported by the second and third *Freeman* factors. See *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013).

Turning to the first *Freeman* factor, we find guidance in *Mossman*, which also considered a plea to one count of aggravated indecent liberties with a child, although the defendant there was 25 years of age and the victim was 15 years of age. Despite these and a few other differences, our Supreme Court's summary could apply to the present case:

5

"[S]ubstantial competent evidence supports the district court's findings relating to the first *Freeman* factor and we will not reweigh that evidence. In turn, the district court's factual findings support its legal conclusion that the first *Freeman* factor does not weigh in Mossman's favor because Mossman's offense was a serious crime; historically a sex offense against a minor has been treated as a forcible or violent felony without regard to whether there is physical force; Mossman knowingly ignored his victim's status as a minor; Mossman acted in a manner consistent with his character, which was described as lacking in impulse control and reflecting a rebellious nature; and the penological purposes for lifetime postrelease supervision include retribution, deterrence, incapacitation, and rehabilitation." 294 Kan. at 912.

Aller argues he was "very young," but his victim was very young as well, younger than the victim in *Mossman*. His sexual involvement with the victim was also substantial. Aller argues he "had no prior criminal offenses," but as related in the affidavit, he admitted to having sexual relations with another minor. All things considered, there was substantial competent evidence to support the district court's determination that the degree of danger Aller presents to society rendered lifetime postrelease supervision proportionate to his crime. We find no error in the district court's legal conclusion or factual findings.

Affirmed.